IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re QUINTUS SECURITIES LITIGATION

No C-00-4263 VRW

ORDER

This Document Relates To:

ALL ACTIONS

_____/

This consolidated securities fraud class action was brought on behalf of all persons who purchased or acquired common stock of Quintus Corporation ("Quintus") during the period November 15, 1999, through November 15, 2000, inclusive (the "class period"). The parties have reached a settlement and now seek final approval of the proposed settlement and the proposed plan of allocation. Doc #274. Lead plaintiff and lead counsel also submit an application for award of attorney fees and reimbursement of expenses. Doc #375. For the reasons discussed below, final approval of the class settlement and plan of allocation is GRANTED and the application for award of attorney fees and reimbursement of expenses is GRANTED.

I

When Quintus was incorporated in 1984, its business was artificial intelligence software. During the class period, Quintus provided "e-Customer Relationship Management" or "eCRM" solutions, primarily through its "eContact" software. Quintus grew through a series of acquisitions in 1997 through 1999.

As part of an initial public offering completed November 15, 1999, Quintus sold 5.175 million shares of Quintus common stock at $18/share. Consistent with those heady times, the stock price soon reached $55/share. On February 28, 2000, Quintus announced its intent to acquire Mustang.com, which developed corporate e-mail management software. Quintus filed a registration statement in connection with the Mustang acquisition on March 28, 2000.

On November 15, 2000, its first anniversary as a publicly traded company, Quintus announced that it was reviewing previously filed financial statements. The price of Quintus shares fell from $6.00/share to $2.97/share before trading was halted by NASDAQ shortly after noon, representing a one-day (or less) price drop of just over 50%. On November 22, 2000, Quintus announced the results of a financial audit, which revealed that Quintus had overstated revenue on several occasions. The truth regarding Quintus's financial condition continued to emerge over the next few months and NASDAQ delisted Quintus stock on February 16, 2001. After two days of over-the-counter trading, the price of Quintus common stock sank to $0.14 on February 22, 2001, when Quintus filed for Chapter 11 bankruptcy.

A flurry of class actions alleging securities fraud were

filed in this court and ultimately consolidated. Doc #71. The court designated the law firm of Weiss & Yourman (now Weiss & Lurie) as lead counsel pursuant to a competitive selection process. See <u>In re Quintus Sec Litig</u>, 148 F Supp 2d 967 (ND Cal 2001). Following two rounds of motions to dismiss, the court designated Roman Reznik as lead plaintiff. Doc #201.

The first amended consolidated class action complaint, Doc #215 (CAC), alleges that false and misleading statements of material fact appeared in the Quintus IPO registration statement, the Mustang registration statement and various periodic financial reports. Accordingly, the CAC asserts claims under sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "1933 Act") as well as claims under sections 10(b), 14(a)(9) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"). Id ¶¶291-357.

This litigation is only one current in Quintus's wake. As noted, Quintus initiated a Chapter 11 bankruptcy proceeding in the United States District Court for the District of Delaware. Additionally, various shareholder actions were filed in California and Texas state courts. Thus, the proposed settlement presently under consideration is part of a global settlement to be administered by the Chapter 11 trustee.

On July 7, 2006, the court preliminarily approved the proposed settlement and certified the class. Doc #269. The court ordered that notice of the pending settlement and final approval hearing be mailed to potential class members on July 25, 2006. Doc #273. Over 20,000 notice letters were mailed to potential settlement class members and shareholders of record. Doc #277 at ¶5. Not a single class member objected to the settlement or

3

requested exclusion from the class settlement in response to the notice letter. Id at ¶7-8. Similarly, no objection was raised at the final settlement approval hearing on December 5, 2006.

## II

The proposed settlement agreement provides that defendants will pay $10.1 million in cash into a common fund to be distributed to class members.

The question currently before the court is whether this settlement should be approved. "The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." FRCP 23(e)(1)(A). The court bears in mind the Ninth Circuit's "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." <u>Class Plaintiffs v City of Seattle</u>, 355 F2d 1268, 1276 (9th Cir 1992). While no class member has objected, the court must still review the proposed settlement. Manual for Complex Litigation (Fourth) §21.635 ("Even if there are no or few objections or adverse appearances before or at the fairness hearing, the judge must ensure that there is sufficient record as to the basis and justification for the settlement").

The court may approve a settlement "only after a hearing and on finding that the settlement * * * is fair, reasonable and adequate." FRCP 23(e)(1)(C). A final approval hearing was held on December 5, 2006. The Ninth Circuit has set forth the following factors for courts considering approval of class action settlements:

**4**

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Village v General Electric, 361 F3d 566, 575 (9th Cir 2004). These factors overwhelmingly support approval of the class settlement. The court discusses the settlement evaluation factors that are relevant in this case. Id at 576 n7.

This settlement follows six years of protracted litigation, discovery and negotiation. Further litigation would require plaintiffs to survive motions for summary judgment and, if successful, present their case to a jury. The considerable risk and cost associated with further litigation is enhanced by Quintus's pending bankruptcy litigation. This court noted early in these proceedings that "plaintiffs are going to have trouble finding deep pockets in this case." Doc #85 at 37. This global settlement divides the limited resources of a bankrupt corporation among the many litigants suing Quintus. Doc #276 at ¶ 6. Much of the remaining value to be apportioned among the litigants is from Quintus's directors and officers liability insurance policies. The settlement class, however, is receiving the "lion's share" of the insurance coverage. Doc #276 at ¶46. Weighing the risks and costs of further litigation, the court concludes that this settlement is advisable.

The settlement amount, $10.1 million, closely resembles the $9,996,000 settlement predicted by the Haas Study referenced by this court in its previous order. Quintus, 148 F Supp 2d at 985.

5

1  This proposed settlement's settlement/potential investor loss (PIL)
2  ratio of 16.83% marginally exceeds the average class action
3  securities litigation settlement/PIL ratio of 16.66%.  Mukesh
4  Bajaj, Sumon C Mazumdar & Atuya Sarin, <u>Securities Class Action</u>
5  <u>Settlements</u>, 43 Santa Clara L Rev 101, 116 tbl 11 (2003).
6  Achieving the average settlement/PIL ratio despite having to
7  compete with Quintus's bankruptcy estate for remaining resources
8  indicates the fairness of this settlement to class members.
9         Following the hearing, plaintiffs' counsel expressed
10 concern that courts' use of studies to predict recovery at the
11 outset of litigation may tend to cap recovery at that level.  While
12 the court does not discount that concern, it warrants mention that
13 the Haas study data reflect a range of litigation results.  Any
14 individual case may differ and differ significantly from the
15 average or median results.  In any event, the obstacles to a
16 greater recovery in this case were substantial.  Given those
17 difficulties, a recovery within the average range may well
18 represent an achievement that is greater than average.
19         Finally, the absence of any objections or requests for
20 exclusion among a class of this size demonstrates the overall
21 reasonableness of this settlement.
22         The risk and cost of further litigation, the settlement
23 amount and the silence of class members provide powerful evidence
24 that the settlement is fair, reasonable and adequate.  Accordingly,
25 plaintiffs' motion for final approval of the class action
26 settlement is GRANTED.
27 //
28 //

# III

Plaintiffs also seek final approval of the plan of allocation of the settlement fund. Doc #274. The plan of allocation operates as follows:

> To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's claim. If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage that each Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants. A claim will be computed as follows: the claim shall be equal to the amount paid for shares of Quintus common stock purchased or acquired by Settlement Class members during the Settlement Class Period, less: (a) the amount realized from the sale of any such shares during the Settlement Class Period or through February 22, 2001, or $0.14 per share, whichever is greater; or (b) the number of any such shares held at the close of business on February 22, 2001, multiplied by $0.14 (the closing price of Quintus stock on February 22, 2001).

Doc #277 Ex A at 10. The plan of allocation was fully described in notice letters to potential class members and no objections were submitted to the court or raised at the hearing.

The court has discretion to approve a plan of allocation that is fair and reasonable. In re Heritage Bond Litigation, 2005 US Dist LEXIS 13555 at *38 (CD Cal 2005). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." Id (quoting In re Oracle Securities Litigation, 1994 US Dist LEXIS 21593 at *1 (ND Cal 1994)).

Because this plan provides proportional reimbursement and no class member objected, the court concludes the plan of allocation is fair and reasonable. Accordingly, the motion for final approval of the plan of allocation is GRANTED.

7

**IV**

Lead plaintiff and his counsel seek an award of attorney fees and expenses totaling $1,141,978.40. Doc #275 at 16. This amount includes attorney fees of $817,500, expenses of $150,000, reimbursement of fees and expenses of bankruptcy counsel of $162,478.40 and reimbursement of $12,000 to the lead plaintiff. Id. The fees and expenses sought amount to 11.3% of the total settlement amount.

The court preliminarily approved an award of attorney fees and expenses in its July 7, 2006, order. Doc #269 at 21. This request differs by including $15,096.40 of additional fees and expenses of bankruptcy counsel and $12,000 in reimbursement to lead plaintiff. The court anticipated such an increase in the amount sought for bankruptcy counsel. Id. Lead plaintiff, however, seeks reimbursement for 80 hours of his time at a rate of $150/hour for the first time. Doc #276 Ex 5 at ¶¶2-3. The court is authorized to reimburse lead plaintiff for reasonable costs and expenses related to the representation of the class, including lost wages. 15 USC §78u-4(a)(4). As a registered securities principal and the principal of RAMA Financial, lead plaintiff's request for compensation is reasonable. Doc #276 Ex 5 at ¶3.

These minor increases in the amount requested do not disturb the court's prior conclusion that "the amount of attorney fees (including those incurred by bankruptcy counsel) is relatively modest in relation to the total class recovery." Doc #269 at 21. This court, however, "rejects reliance solely on a comparison of the percentage fee requested here with other percentage awards or with a so-called benchmark percentage." In re HPL Technologies,

8

<u>Inc Sec Litig</u>, 366 F Supp 2d 912, 914 (ND Cal 2005). Instead, the court employs a lodestar cross-check to determine the reasonableness of the requested attorney fees.

"Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors." Id at 919. In performing a cross-check, the court calculates the implied multiplier to determine its reasonableness. Lead counsel has spent more than 5,000 attorney hours in this matter, most of them by senior attorneys. Doc #275 Ex 1. Applying the <u>Laffey</u> matrix hourly rates, as adjusted for Los Angeles and cost of living increases, lead counsel calculates its lodestar as $1,976,262.50. Id at 12 and Ex 1. The requested attorney fees of $817,500, less than half the lodestar, provide an implied lodestar multiplier of 0.414. Id at 13. This multiplier is indeed reasonable, indicating class members obtained a significant discount on market attorney rates. Notably, competitive selection of class counsel produced this low loadstar ratio or negative multiplier. <u>Quintus</u>, 148 F Supp 2d 967. Despite any statutory limitation on use of competitive selection, see <u>In re Cavanaugh</u>, 306 F3d 726 (9th Cir 2002), this provides further evidence that courts may look to the competitive selection cases in determining a reasonable level of fees and costs. See <u>In re Cabletron, Inc Securities Litigation</u>, 2006 US Dist LEXIS 75188 (D NH 2006).

The requested attorney fees and expenses are reasonable compensation for the value provided to the class. This is further evidenced by the lack of class member objections to the preliminarily approved attorney fees and expenses included in the

9

class notice.

Accordingly, the application for award of attorney fees and reimbursement of expenses is GRANTED.

IT IS SO ORDERED.

**VAUGHN R WALKER**

**United States District Chief Judge**